**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------------------------------X
ARNULFO MALDONADO, SANTIAGO, HERRERA, JORGE LEYVA CABRERA, and DOMINGO JUAREZ, *individually and on behalf of others similarly situated,*

*Plaintiffs,*

-against-

TAVERNA KYCLADES, INC. (D/B/A) TAVERNA KYCLADES, and THEMIOS PAPADOPOULOS,

*Defendants.*

--------------------------------------------------------X

20-cv-6850

**DECLARATION OF CLELA ERRINGTON IN SUPPORT OF PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT**

Clela Errington, an attorney duly admitted to practice in New York and in this Court, affirms on penalty of perjury pursuant to 28 U.S.C. § 1746 as follows:

1.     I represent Plaintiffs in this lawsuit for unpaid wages, liquidated damages, and attorneys' fees under the FLSA and New York Labor Law and regulations.

2.     I submit this affirmation in support of Plaintiff's application for a default judgment against Taverna Kyclades Inc. (d/b/a Taverna Kyclades) and Themios Papadopoulos

Procedural History

3.     Plaintiffs commenced this action by filing the Complaint (and associated documents) on August 25, 2020. A true and accurate copy of the Complaint is attached hereto as **Exhibit 1.**

4.     Plaintiffs filed an Amended Complaint on December 1, 2020. A true and accurate copy of the First Amended Complaint is attached hereto as **Exhibit 2.**

5.     This is an action for unpaid minimum and overtime wages, spread of hours pay, +ct (29 U.S.C. § 201 et seq., "the "FLSA") the New York Labor Law ("NYLL"), and associated rules and regulations. *See* Exhibits 1-2.

6.     The Court has subject matter jurisdiction of the Plaintiff's federal claims pursuant to 29 U.S.C. § 201 *et seq.* (FLSA) and 28 U.S.C. § 1331 (federal question), and jurisdiction over the New York state law claims (such as the NYLL) under 28 U.S.C. § 1367(a) (supplemental jurisdiction).  *See* Exhibits 1-2.

7.     A summons and copy of the Amended Complaint was properly served on Defendant Themios Papadopoulos on December 4, 2020. A true and accurate copy of the affidavit of service is attached hereto as **Exhibit 3**.

8.     A summons and copy of the Amended Complaint was properly served on Defendant Taverna Kyclades Inc. on December 8, 2020. A true and correct copy of the affidavit of service is attached hereto as **Exhibit 4.**

9.     Upon information and belief, Defendants are neither an infants nor incompetent persons nor in the active service of the United States military.

10.     The Clerk of the Court then noted default against Defendants on February 4, 2021 . A true and correct copy of the Clerk's Certificates of Default against Themios Papadopoulos and Taverna Kyclades, Inc. are respectively attached hereto as **Exhibits 5 and 6** respectively.

11.     The Declaration of Arnulfo Maldonado ("Maldonado Declaration") in support of this motion for default judgment is annexed as **Exhibit 7**.

12.     The Declaration of Jorge Leyva Cabrera ("Cabrera Declaration") in support of this motion for default judgment is annexed as **Exhibit 8**.

13.     The Declaration of Domingo Juarez ("Juarez Declaration") in support of this motion for default judgment is annexed as **Exhibit 9**.

14.     No part of the judgment sought has been paid.

Statement of Facts Supporting Entry of Judgment

15.     As alleged in the Complaint, Amended Complaint, and as stated in Plaintiffs' Declarations, Defendants control a Greek Restaurant  under the name "Taverna Kyclades" located in Manhattan, New York. (Complaint ¶ 23, Amended Complaint ¶ 23).

16.     Plaintiffs are former employees of Defendants. (Complaint ¶ 1, Amended Complaint ¶ 1).

17.     Defendants had the power to hire and fire Plaintiffs, controlled Plaintiffs' terms and conditions of employment, and determined the rate and method of Plaintiffs, compensation. (Complaint ¶ 33, Amended Complaint ¶ 33).

18.     Defendants had employees who handled and used goods that were produced outside the State of New York and travelled through interstate commerce.  (Complaint ¶ 35, Amended Complaint ¶ 35).

19.     Upon information and belief, from approximately 2014 until on or about 2020 Defendants had a gross volume of sales that exceeded $500,000. (Complaint ¶ 34, Amended Complaint ¶ 34),

20.     Defendants regularly required Plaintiffs to work without paying them minimum wage and overtime compensation (Complaint ¶ 131, Amended Complaint ¶ 131).

<u>Arnulfo Maldonado</u>

21.     Plaintiff Arnulfo Maldonado ("Plaintiff Maldonado") was employed as a cook by Defendants at Taverna Kyclades from approximately September 1, 2014 until on or about March 22, 2020.  (Complaint ¶ 38, Amended Complaint ¶ 38, Maldonado Declaration ¶ 7).

22.     Plaintiff Maldonado's work did not require discretion or independent judgment. (Complaint ¶ 41, Amended Complaint ¶ 41, Maldonado Declaration ¶ 9).

3

23.     From approximately January 1, 2014 until on or about August 31, 2019, Plaintiff Maldonado worked from approximately 8:30 a.m. until on or about 9:00 p.m., Mondays and Wednesdays and from approximately 9:00 a.m. until on or about 5:30 p.m., Tuesdays, Thursdays, Fridays, and Saturdays (typically 59 hours per week). (Complaint ¶ 43, Amended Complaint ¶ 43, Maldonado Declaration ¶ 12).

24.     From approximately September 1, 2019 until on or about March 22, 2020, Plaintiff Maldonado worked from approximately 9:00 a.m. until on or about 9:00 p.m., Mondays and Wednesdays and from approximately 9:00 a.m. until on or about 5:30 p.m., Tuesdays, Thursdays, Fridays, and Saturdays (typically 58 hours per week). (Complaint ¶ 44, Amended Complaint ¶ 44, Maldonado Declaration ¶ 13).

25.     Throughout Plaintiff's entire employment, Defendant paid him his wages by check. (Complaint ¶ 45, Amended Complaint ¶ 45.

26.     From approximately June 1, 2014 until on or about December 31, 2014, Defendants paid Plaintiff Maldonado $15.00 per hour. (Complaint ¶ 46, Amended Complaint ¶ 46, Maldonado Declaration ¶ 14).

27.     From approximately January 1, 2015 until on or about December, 31, 2016, Defendants paid Plaintiff Maldonado $16.00 per hour. (Complaint ¶ 47, Amended Complaint ¶ 47, Maldonado Declaration ¶ 15).

28.     From approximately January 1, 2017 until on or about December 31, 2017, Defendants paid Plaintiff Maldonado $17.00 per hour. (Complaint ¶ 48, Amended Complaint ¶ 48, Maldonado Declaration ¶ 16).

29.     From approximately January 1, 2018 until on or about March 22, 2020, Defendants paid Plaintiff Maldonado $18.00 per hour. (Complaint ¶ 49, Amended Complaint ¶ 49, Maldonado Declaration ¶ 17).

30.     Plaintiff Maldonado's pay did not change even when he was required to stay later or work a longer day than his usual schedule. (Complaint ¶ 50, Amended Complaint ¶ 50, Maldonado Declaration ¶ 20).

31.     For example, from approximately 2014 until on or about 2019, Defendants required Plaintiff Maldonado to start working 30 minutes prior to and after his scheduled start time, and did not pay him for the additional time he worked. (Complaint ¶ 51, Amended Complaint ¶ 51, Maldonado Declaration ¶ 20).

32.     Although Plaintiff Maldonado was required to keep track of his time, Defendants required him to record fewer hours than he actually worked. As a result, Plaintiff Maldonado was not compensated for all of the hours that he worked. Defendants required Plaintiff Maldonado to sign a document, the contents of which he was not allowed to review in detail, in order to release his weekly pay.  (Complaint ¶ 55, Amended Complaint ¶ 55, Maldonado Declaration ¶ 20).

33.     No notification, either in the form of posted notices or other means, was ever given to Plaintiff regarding minimum wages under the FLSA and NYLL. (Complaint ¶ 58, Amended Complaint ¶ 58, Maldonado Declaration ¶ 25).

34.     Defendants did not provide Plaintiff Maldonado an accurate statement of wages. In fact, Defendants adjusted Plaintiff Maldonado's paystubs so that they reflected inaccurate wages and hours worked. (Complaint ¶ 59, Amended Complaint ¶ 59, Maldonado Declaration ¶ 24).

35.     Defendants took improper and illegal deductions from Plaintiff Maldonado's wages; specifically, Defendants deducted $22 every week from Plaintiff Maldonado's weekly

paycheck for meals he never ate. (Complaint ¶ 53, Amended Complaint ¶ 53, Maldonado Declaration ¶ 22).

36.    Defendants did not provide Plaintiff with any written notice of his rate of pay in English and in Spanish (his primary language) of his employer's regular pay day and other information required by NYLL §195(1). (Complaint ¶ 61, Amended Complaint ¶ 61, Maldonado Declaration ¶ 26).

<u>Plaintiff Jorge Leyva Cabrera</u>

37.    Plaintiff Cabrera was employed by Defendants at Taverna Kyclades as a cook from approximately January 1, 2014 until on or about March 22, 2020. (Complaint ¶ 86, Amended Complaint ¶ 86, Cabrera Declaration ¶ 7)

38.    From approximately January 1, 2014 until on or about March 22, 2020, Plaintiff Cabrera worked from approximately 3:00 p.m. until on or about 11:00 p.m., four days per week and from approximately 3:00 until on or about 11:30 p.m., two days per week (typically 49 hours per week). (Complaint ¶ 91, Amended Complaint ¶ 91, Cabrera Declaration ¶ 12).

39.    Throughout his employment, Defendants paid Plaintiff Cabrera his wages by check. (Complaint ¶ 92, Amended Complaint ¶ 92).

40.    From approximately January 1, 2014 until on or about December 31, 2018, Defendants paid Plaintiff Cabrera $15.00 per hour. (Complaint ¶ 93, Amended Complaint ¶ 93, Cabrera Declaration ¶ 13).

41.    From approximately January 1, 2019 until on or about November 30, 2019, Defendants paid Plaintiff Cabrera $16.00 per hour. (Complaint ¶ 94, Amended Complaint ¶ 94, Cabrera Declaration ¶ 14).

42.     From approximately December 1, 2019 until on or about February 29, 2020, Defendants paid Plaintiff Herrera $17.00 per hour. (Complaint ¶ 95, Amended Complaint ¶ 95, Cabrera Declaration ¶ 15).

43.     From approximately March 1, 2020 until on or about March 22, 2020, Defendants paid Plaintiff Herrera $18.00 per hour. (Complaint ¶ 96, Amended Complaint ¶ 96, Cabrera Declaration ¶ 16).

44.     Plaintiff Cabrera's pay did not vary even when he was required to stay later or work a longer day than his usual schedule. (Complaint ¶ 97, Amended Complaint ¶ 97, Cabrera Declaration ¶ 17).

45.     Defendants never granted Plaintiff Cabrera any breaks or meal periods of any kind. (Complaint ¶ 99, Amended Complaint ¶ 99, Cabrera Declaration ¶ 20).

46.     Nevertheless, Defendants deducted $22 every week from Plaintiff Cabrera's weekly paycheck for meals he never ate. (Complaint ¶100, Amended Complaint ¶ 100, Cabrera Declaration ¶ 20).

47.     Although Plaintiff Cabrera was required to keep track of his time, Defendants required him to record fewer hours than he actually worked. As a result, he was not paid for every hour he worked. (Complaint ¶ 102, Amended Complaint ¶ 102, Cabrera Declaration ¶ 22).

48.     On a number of occasions, Defendants required Plaintiff Cabrera to sign a document, that falsely set forth the hours he worked per week. (Complaint ¶ 103, Amended Complaint ¶ 103, Cabrera Declaration ¶ 22).

49.     No notification, either in the form of posted notices or other means, was ever given to Plaintiff Herrera regarding overtime and wages under the FLSA and NYLL. (Complaint ¶ 105, Amended Complaint ¶ 105, Cabrera Declaration ¶ 26).

7

50.     Defendants did not provide Plaintiff Cabrera an accurate statement of wages, as required by NYLL 195(3). (Complaint ¶ 106, Amended Complaint ¶ 106, Cabrera Declaration ¶ 22).

51.     In fact, Defendants adjusted Plaintiff Cabrera's paystubs so that they reflected inaccurate wages and hours worked. (Complaint ¶ 107, Amended Complaint ¶ 107, Cabrera Declaration ¶ 22).

52.     Defendants did not give any notice to Plaintiff Cabrera, in English and in Spanish (Plaintiff Cabrera's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

Plaintiff Domingo Juarez

53.     Plaintiff Juarez was employed by Defendants at Taverna Kyclades as a food preparer and dishwasher from approximately May 1, 2016 until on or about August 12, 2020. (Complaint ¶ 109, Amended Complaint ¶ 109, Juarez Declaration ¶ 7)

54.     From approximately May 1, 2016 until on or about March 15, 2020, Plaintiff Juarez worked from approximately 3:00 p.m. until on or about 12:00 a.m., 6 days a week (typically 54 hours per week). (Complaint ¶ 114, Amended Complaint ¶ 114, Juarez Declaration ¶ 12)

55.     From approximately May 16, 2020 until on or about July 26, 2020, Plaintiff Juarez worked from approximately 1:00 p.m. until on or about 9:00 p.m., 3 days per week (typically 24 hours per week). (Complaint ¶ 115, Amended Complaint ¶ 115, Juarez Declaration ¶ 13)

56.     From approximately July 27, 2020 until on or about August 12, 2020, Plaintiff Juarez worked from approximately 3:00 p.m. until on or about 10:00 p.m., 5 days a week (typically 35 hours per week). (Complaint ¶ 116, Amended Complaint ¶ 116, Juarez Declaration ¶ 14)

57.     Throughout his employment, Defendants paid Plaintiff Cabrera his wages by check. (Complaint ¶ 116, Amended Complaint ¶ 116).

58.     From approximately May 1, 2016 until on or about December 31, 2017, Defendants paid Plaintiff Juarez $11.00 per hour. (Complaint ¶ 118, Amended Complaint ¶ 118, Juarez Declaration ¶ 15)

59.     From approximately January 1, 2018 until on or about December 31, 2018, Defendants paid Plaintiff Juarez $13.00 per hour. (Complaint ¶ 119, Amended Complaint ¶ 119, Juarez Declaration ¶ 16)

60.     From approximately January 1, 2019 until on or about August 12, 2020, Defendants paid Plaintiff Juarez $15.00 per hour. (Complaint ¶ 120, Amended Complaint ¶ 120, Juarez Declaration ¶ 17)

61.     Plaintiff Juarez was never granted any breaks or meal periods of any time. Nevertheless, Defendants deducted $22 every week from Plaintiff Juarez's weekly paycheck for meals he never ate. (Complaint ¶ 122, Amended Complaint ¶ 122, Juarez Declaration ¶ 22)

62.     Although Plaintiff Juarez was required to keep track of his time, Defendants required him to record fewer hours than he actually worked. As a result, Plaintiff Juarez was not compensated for all of the hours that he worked. (Complaint ¶ 124, Amended Complaint ¶ 124, Juarez Declaration ¶ 24)

63.     On a number of occasions, Defendants required Plaintiff Juarez to sign a document, the contents of which he was not allowed to review in detail. (Complaint ¶ 125, Amended Complaint ¶ 125)

64.     In addition, in order to get paid, Plaintiff Juarez was required to sign a document in which Defendants misrepresented the hours that he worked per week. (Complaint ¶ 126, Amended Complaint ¶ 126, Juarez Declaration ¶ 24)

65.     No notification, either in the form of posted notices or other means, was ever given to Plaintiff Juarez regarding overtime and wages under the FLSA and NYLL. (Complaint ¶ 127, Amended Complaint ¶ 127, Juarez Declaration ¶ 26)

66.      Defendants did not provide Plaintiff Juarez an accurate statement of wages, as required by NYLL 195(3). (Complaint ¶ 128, Amended Complaint ¶ 128, Juarez Declaration ¶24)

67.     In fact, Defendants adjusted Plaintiff Juarez's paystubs so that they reflected inaccurate wages and hours worked. (Complaint ¶ 107, Amended Complaint ¶ 107, Juarez Declaration ¶ 24)

68.     Defendants did not give any notice to Plaintiff Juarez, in English and in Spanish (Plaintiff Juarez's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1). (Complaint ¶ 108, Amended Complaint ¶ 108, Juarez Declaration ¶ 25)

<u>Plaintiffs are entitled to Judgment by Default</u>

69.     It is well settled that Defendants who fail to file an answer or otherwise move in respect to a complaint filed, are deemed to have admitted all of the well-pleaded allegations in the complaint pertaining to liability. <u>D.H. Blair & Co., Inc. v. Gottdiener</u>, 462 F.3d 95, 107 (2d Cir. 2006) ("Rule 55 tracks the ancient common law axiom that a default is an admission of all well-pleaded allegations against the defaulting party") (citation omitted).

70.     Defendants have failed to file an answer or otherwise respond to the Amended Complaint, despite the time to do so have expired.

71.     Thus, Plaintiffs' allegations are unchallenged, and consequently the Complaint and declarations attached hereto establish Plaintiff's right to default judgment.

72.     Upon entry of a default, the court may award damages based upon evidence submitted through affidavits and exhibits, or by an evidentiary hearing. Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Foundation Contractors, Inc., 699 F.3d 230, 234 (2d Cir. 2012). "While Rule 55(b)(2) permits the district court to conduct a hearing to determine damages, such a hearing is not mandatory." Id. "Together, 'Rule 55(b)(2) and relevant case law give district judges much discretion in determining when it is "necessary and proper" to hold an inquest on damages.'" Id. (quoting Tamarin v. Adam Caterers, Inc., 13 F.3d 51, 54 (2d Cir. 1993)).

73.     Plaintiffs maintain that the proof submitted herewith is sufficient on its own to obviate the need for a hearing on damages. Based on the evidence Plaintiffs have put forward, damages, including back pay, liquidated damages, and prejudgment interest, should be awarded in the amount of $365,040.90, and attorneys' fees and costs should be awarded in the amount of $.

<u>Plaintiff's Damages Calculation</u>

74.     Annexed as **Exhibit 10** is a chart setting out the damages Plaintiff is entitled to recover.

75.     In the damages chart, the Plaintiffs' wage and hour damages (including unpaid wages, overtime wage damages, spread of hours wage damages, liquidated damages, and interest) are calculated in segments of time, broken into "Pay Periods." Each pay period calculates the number of weeks in each period ("No. of Weeks in Pay Period"), and then based upon each of the Plaintiff's affidavits, lists the number of hours worked per week in each period ("Hours Per Week

in Period). The applicable minimum wage data, and associated overtime rate, are included as applicable for each pay period. Then there is a column for Paid Wages, the first column calculates the "regular rate of pay" for each period by dividing the amount actually paid each week to each Plaintiff (the "Credited Weekly Pay") for each period, then dividing that amount by the "Hours Per Week in Period"). The overtime rate is calculated using a 1.5 multiplier for time and a half overtime calculations later in the chart. The "Credited Weekly Pay" is the amount of money actually paid and is based upon the Plaintiffs' affidavit. The information the number of days each week in that period for which the Plaintiffs worked in excess of 10 hours per day is also included, and was therefore entitled to Spread of Hours Pay ("No. of SOH Days Per Wk in Period").

76.     Calculations within the Chart – The "Lawful Weekly Pay" column of the chart calculates what the Plaintiff should have been paid per week during each pay period. The actual formula used in this column is as follows:((greater of minimum wage or calculated base pay) * Hours Per Week up to 40) + ((greater time and a half rate) * (Hours Per Week over forty, if any)).

77.     The chart therefore automatically determines whether the effective calculated base rate of pay falls below the minimum wage, and if it does, it discards it. If it does not, it uses it for the subsequent calculations (as the Plaintiff is entitled to earn at least the minimum wage). The chart then automatically calculates what the hours should have been compensated at under the base rate of pay up to the first 40 hours of work per week, and then at time-and-a-half pay for any hours over 40. The Chart then subtracts the amount actually paid to Plaintiff (the "Credited Weekly Pay") and then derives the "Underpayment per Week." This number is then multiplied by the number of weeks in each period and derives the total damages due for unpaid minimum wages and overtime for each period ("Unpaid Wages & OT"). The Chart then applies the liquidated damages provisions of the NYLL to the "Unpaid Wages and OT" automatically in the "Liq. Damages on Wages &

OT" by 25% for damages occurring prior to April 9, 2011, if any, and 100% for any subsequent damages.

78.     The unpaid spread of hours pay ("Unpaid Spread of Hours (SOH) Pay") is derived by multiplying (the number of SOH days per week) * (the number of weeks per period) * (the minimum wage).  The liquidated damages on SOH pay are all calculated at the rate of 100%.

79.     The legal basis for the damages calculations within the chart are set out below.

<u>Back Pay</u>

80.     At all times relevant to the FLSA claims in this action, the minimum wage rate under the FLSA was $7.25 per hour.  Employees must be paid one-and-one half times their regular rate for each hour worked over forty (40) hours worked in a week.  29 U.S.C. § 207(a)(1). From 2011 to 2013, the minimum wage under New York law was the same as under the FLSA.

81.     The New York Minimum wage range increased to $8.00 per hour as of December 31, 2013; it further increased to $8.75 per hour as of December 31, 2014; it further increased to $9.00 per hour as of December 31, 2015; it further increased to $11.00 per hour on December 31, 2016 (in New York City); and it further increased to $13.00 per hour on December 31, 2017 (in New York City).

82.     New York's rules on overtime explicitly incorporate those of the FLSA, and thus require pay at one-and-one-half times the regular normal rate for each hour over forty hours worked in a week. 12 N.Y.C.R.R. § 142-2.2.

83.     The onus is on the employer to maintain proper records of employees' hours worked, 29 U.S.C. § 211(c). "In a FLSA case, in the absence of rebuttal by [D]efendants, [P]laintiffs' recollection and estimates of hours worked are presumed to be correct."  Zeng Liu v.

13

Jen Chu Fashion Corp, 2004 U.S. Dist. LEXIS 35, *8 (S.D.N.Y. 2004) (the court accepted the Plaintiff's estimates of hours worked).

> An employee has carried out his burden [of production under the FLSA] if he proves that he has in fact performed work for which he was improperly compensated[,] and if he produces sufficient evidence to show the amount and extent of that work by just and reasonable inference. The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate. *Id.* (citing *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687-88 (1946), and other cases).

84.     Here, Plaintiffs were not paid minimum wage and overtime compensation at the lawful rate. Rather, defendants paid a straight hourly rate for all hours worked, and at all times purposefully underreported the hours that Plaintiffs worked resulting in certain of them receiving no pay at all for some of their hours. They further unlawfully deducted $22/week from all of the Plaintiffs' weekly checks.

85.     Plaintiffs are entitled to unpaid minimum wages and overtime compensation as follows:

a.   Arnulfo Maldonado - $81,943.50

b.   Jorge Leyva Cabrera - $30.970.50

c.   Domingo Juarez - $25,512.00

86.     As of March 4, 2021, Plaintiffs are collectively entitled to $42,166.84 in prejudgment interest on wages and overtime. See **Exhibit 10**.

Spread of Hours Pay

87.     Plaintiff Maldonado is also entitled to "spread-of-hours" pay under the New York spread-of-hours regulation, which requires employers to pay workers for an additional hour of overtime-rate pay beyond their regular pay when the workday is more than ten (10) hours.  12 N.Y.C.R.R. § 146-1.6; Angamarca v. Pita Grill 7 Inc., 2012 U.S. Dist. LEXIS 108322, *16-17, 2012 WL 3578781 (S.D.N.Y. Aug. 2, 2012).

88.     As set out above, plaintiff Maldonado routinely worked more than 10 hours per day during his employment with the Defendants.

89.     Plaintiff Maldonado is entitled to $ in unpaid spread of hours pay. As of February 19, 2021, Plaintiff is entitled to $ in prejudgment interest on the unpaid spread of hours pay. See Exhibit 4.

<u>Three Year Statute of Limitations Under FLSA</u>

90.     Under the FLSA, when the underpayment by the employer is willful, the limitations period increases from two (2) to three (3) years.  29 U.S.C. § 255(a).

91.     Willfulness under the FLSA means the employer "knew or showed reckless disregard for the matter of whether [the employer's] conduct was prohibited by the statute," McLaughlin v. Richland Shoe Co., 486 U.S. 128, 133 (1988); Damassia v. Duane Reade, Inc., 2005 U.S. Dist. LEXIS 9768 at *5 (S.D.N.Y. May 20, 2005) (willfulness was properly pleaded by alleging, inter alia, that the employer was "aware of the existence of the FLSA and its overtime requirements."). Willfulness is also established when an employer fails to investigate whether its compensation policy was legal.  See Hardrick v. Airway Freights Systems, Inc., 63 F. Supp. 2d 898, 904 (N.D.Ill. 1999);   v. IBP, Inc., 339 F.3d 894, 909 (9th Cir. 2003), aff'd, 126 S.Ct. 514 (2005) (upholding the three-year statute of limitations because employer was on notice of FLSA requirements but "took no affirmative action to assure compliance" with them).

92.    In the present matter, Defendants were aware, or should have been aware, of the existence of the FLSA and its overtime requirements. However, the Defendants knew or disregarded the fact that their conduct was prohibited by the FLSA. Furthermore, even if the Defendants did not know of the FLSA, the Defendants' actions are still willful because the Defendants failed to investigate whether their compensation policy was legal.  See Hardrick, 63 F. Supp. 2d at 904.

93.    Moreover, the Defendants failed to post the required information concerning the minimum wage laws, paid the Plaintiff in cash, and had no system for recording, or even having Plaintiff record, his hours.

94.    This deliberate decision to disregard both FLSA and New York law, as well as Defendant' failure to take any affirmative step towards compliance, amount to willfulness for purposes of the FLSA and New York law.   Doo Nam Yang v. ACBL Corp., 427 F. Supp. 2d 327, 340 (S.D.N.Y. 2005)("A failure to pay is 'willful' when the employer knowingly, deliberately, or voluntarily disregards its obligation to pay wages") (internal quotations omitted).

95.    As Plaintiff can establish that Defendants' violation of the FLSA was willful, they are entitled to a three-year limitations period under the FLSA, i.e., starting from April 8, 2013, three years before the complaint was filed.  See, e.g., Decraene v. Neuhaus (U.S.A.), Inc., 2005 U.S. Dist. LEXIS 10836 at *23-*24 (S.D.N.Y. 2005).  Furthermore, under the New York Labor Law and regulations, the limitations period is six years, regardless of willfulness.  N.Y. Labor Law § 663(3). Causes of action under the New York Labor Law accrue in the same manner as do causes of action under the FLSA.  See Godlewska v. Human Dev. Assoc., Inc., 2006 U.S. Dist. LEXIS 30519 at *12 (E.D.N.Y. May 18, 2006).  Therefore, back pay under the New York Labor Law should be

calculated from the start of Plaintiff's employment, which was less than six years from the filing date.

## Unlawful Deductions

96.     Federal law required that wages be paid "free and clear" of all "kick-backs" directly or indirectly to the employer or to another person for the employer's benefit" 20 C.F.R. §531.35.

97.     New York law, similarly, prohibits employers from making deductions from employees' wages except in specific circumstances. " NYLL § 193.

98.     Defendants deducted $22 hours/week from Plaintiffs' wages ostensibly for meals, but Defendants never granted meals or any other type of break.

99.     Plaintiffs are entitled to recover $22 per week unlawfully deducted from their wages. This amount is figured into the "Credited Weekly Pay" column of Exhibit 10..

## Wage Notice and Statement Violations

100.    Defendants never provided Plaintiffs with annual notices of their wages, or a wage statement, as required by NYLL §§ 195(1), 195(3).

101.    Plaintiffs are thus entitled to statutory damages in the maximum amount of $5,000 under each section, for a total of $10,000.00 for each Plaintiff.

## Liquidated Damages

102.    Liquidated damages of 100% of the unpaid wages under the FLSA are mandatory. See 29 U.S.C. § 216(b) ("Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages").  The employer can make this award discretionary, however,

by a showing of good faith.  29 U.S.C. § 260.  In the present matter, the Defendants have defaulted. Consequently, they cannot meet this burden, and thus an award of liquidated damages is mandatory. Liquidated damages should be awarded in an amount equal to the unpaid minimum wages and overtime.  29 U.S.C. § 216(b).

103.    Likewise, under the NYLL, "an employee is also entitled to liquidated damages 'equal to one hundred percent of the total of such underpayments found to be due,' unless the employer proves a good faith basis for believing he or she was in compliance with the law." Wei, 2014 U.S. Dist. LEXIS 182325, *23 (quoting N.Y. Lab. Law § 663(1)).

104.    Given the uncontroverted evidence of Defendants' lack of good faith Plaintiff is entitled by statute to liquidated damages under the New York Labor Law, computed at 25% of the unpaid minimum and overtime wages for the period of time prior to April 9, 2011 and 100% for any subsequent unpaid minimum and overtime wages.

105.    Plaintiffs' aggregate total unpaid wages equal $138,426.00, all incurred after April 9th, 2011. Thus, they are collectively entitled to 100% liquidated damages in the amount of $138,426.00. See Exhibit 10.

106.    Plaintiff Maldonado's total unpaid spread of hours pay equal $6,528.00. They are entitled to 100% liquidated damages in the amount of $6,528.00  See Exhibit 4.

<u>Attorneys' Fees and Costs</u>

107.    The FLSA and the New York Labor Law both contain fee-shifting provisions for actions to recover unpaid wages.  29 U.S.C. § 216(b) ("The court in such action shall, in addition to any judgment awarded to the Plaintiff or Plaintiff, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action"); N.Y. Labor Law § 663(1) ("[An employee] may recover . . . costs and such reasonable attorney's fees as may be allowed by the court").

18

108.    Plaintiff incurred costs and attorneys' fees in pursuing this action, and seeks an award of reasonable attorney's fees and costs in the amount of $14,404.60.

109.    The costs are a total of $905.60 including a filing fee of $400.00, fees associated with serving the Defendants with the summons and complaint.

110.    A breakdown of attorneys' fees and costs incurred in filing the Complaint and seeking default, in the form of this firm's standard billing sheet is attached hereto as **Exhibit 11**.

111.    The timekeepers on this matter are indicated by the following initials and have the following rates:

    a.    "MF" — Michael Faillace, $450 per hour
    b.    "CE" – Clela Errington - $350 per hour
    c.    "PL" – Paralegal work, $100 per hour

A brief biography of each attorney who performed billed work in this matter is as follows:

    i.    Michael Faillace is the Managing Member of Michael Faillace & Associates, P.C, and has been in practice since 1983.  From 1983 to 2000, he was in-house Employment Counsel with International Business Machines Corporation (IBM). He taught employment discrimination as an Adjunct Professor at Fordham University School of Law since 1992 and at Seton Hall University Law School from 1995 to 1998, and he is a nationally-renowned speaker and writer on employment law.  He also is the author of the ADA, Disability Law Deskbook: The Americans with Disabilities Act in the Workplace, published by Practicing Law Institute (PLI), and other employment law publications and presentations.  His regular billing rate of $450 per hour is reflected in <u>Exhibit 6</u>.

ii. Clela A. Errington is an associate at Michael Faillace & Associates, P.C. She is a 2012 graduate of New York University School of Law. She began her career at a series of small law firms focusing on labor and employment law, followed by several years providing litigation support to large law firms. She returned to litigation in 2019, joining the Jones Law Firm, P.C., and joined Michael Faillace & Associates in 2020.

<u>Conclusion</u>

112.   Based on the above information and exhibits, Plaintiff asserts the record supports a judgment against the Defendant in favor of Plaintiff in the total amount of $ for unpaid minimum and overtime wages and damages, spread of hour pay and damages, liquidated damages, prejudgment interest and other claims. Prejudgment interest continues to run and should ultimately be computed through the date judgment is entered.

113.   Additionally, Plaintiff is entitled to $4,022.50 in attorneys' fees and costs.   See Exhibit 5.

114.   As shown herein, no inquest is necessary when, as in the present case, the Court has before it the proper measure of damages and evidence submitted by the Plaintiff that allows damages to be calculated with reasonable certainty.

115.   No part of the judgment sought has been paid.

116.   Sufficient definitive information and documentation is provided such that the amount provided for in the proposed judgment can be calculated, based upon allegations contained in the Complaint, and supplemented by the Plaintiff's affidavit accompanying these motion papers.

117.   Plaintiff also makes a request for interest on the principal amount of the judgment not to exceed 9%, as stated above and in the damages calculations.

118.    Plaintiff also requests that  the judgment provide that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent, as required by NYLL § 198(4).

119.    The calculations made in arriving at the proposed judgment amount are set forth in both the explanation above, and in the damages chart itself.

120.    For the reasons stated above and in the accompanying exhibits, the Plaintiff's motion for a default judgment should be granted.

Dated:  New York, New York
       March 4, 2021

                                      /s/Clela Errington
                                      Clela A. Errington, Esq.