UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
ARNULFO MALDONADO, JORGE LEVYA CABRERA,
and DOMINGO JUAREZ, *individually and on behalf
of others similarly situated*,

                                        Plaintiffs,

                    -against-

THEMIOS PAPADOPOULOS and
TAVERNA KYCLADES, INC. (D/B/A TAVERNA KYCLADES),

                                        Defendants.
-----------------------------------------------------------------X

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:  7/17/2021
```

20-cv-6850 (LGS) (KHP)

<u>REPORT AND RECOMMENDATION
FOLLOWING DAMAGES INQUEST</u>

**TO: THE HONORABLE LORNA G. SCHOFIELD, UNITED STATES DISTRICT JUDGE
FROM: KATHARINE H. PARKER, UNITED STATES MAGISTRATE JUDGE**

Plaintiffs Arnulfo Maldonado, Jorge Levya Cabrera, and Domingo Juarez, former

employees of Greek restaurant Taverna Kyclades, assert claims under the Fair Labor Standards

Act ("FLSA") 29 U.S.C. § 201 *et seq.,* as well as pendent state claims under the New York Labor

Law §§ 190 *et seq*. and 650 *et seq*. ("NYLL"), for unpaid wages, penalties and attorneys' fees and

costs.  After entry of default against the Defendants, the Honorable Lorna G. Schofield referred

this action to me for a report and recommendation on damages.  Defendants did not file an

opposition to the Plaintiffs' Motion for a Default Judgment, nor did they appear at any point in

the damages inquest proceedings.  After review of the submissions, I respectfully recommend

that Plaintiffs be awarded damages as set forth in detail below.

**FACTUAL BACKGROUND**

Plaintiffs Maldonado, Cabrera, and Juarez all worked in back of the house jobs (i.e., non-

customer facing) at Taverna Kyclades ("Kyclades"), which is located in New York City.

Defendant Themios Papadopoulos owned and operated the restaurant and determined the

wages and compensation of the employees at the restaurant, as well as hired and fired

employees.  (FAC ¶¶ 25, 27-32.)

Each of the Plaintiffs submitted sworn declarations in connection with their motion for a

default judgment and damages.  Maldonado attested that he was employed as a cook from on

or about September 1, 2014[1] until March 22, 2020. (FAC ¶ 38; Maldonado Decl. ¶ 10.)  Cabrera

attested he also worked as a cook.  He was employed from approximately January 1, 2014 until

on or about March 22, 2020. (FAC ¶ 86; Cabrera Decl. ¶ 7.)  Juarez attested he was employed as

a food preparer and dishwasher from approximately May 1, 2016 until on or about August 12,

2020. (FAC ¶ 109; Juarez Decl. ¶ 7.)

Plaintiffs attested that they regularly worked in excess of forty hours per week and in

some cases more than ten hours in a day, and that the Defendants failed to pay them the

proper amount of wages. (FAC ¶ 5; Maldonado, Cabrera, and Juarez Decls. ¶ 11)  All Plaintiffs

allege that Defendants required them to record fewer hours than they actually worked, did not

provide accurate statements of wages, deducted $22 every week from their weekly paycheck

for meals they never ate, and never granted Plaintiffs any breaks.  (FAC ¶¶ 8-10; Maldonado,

Cabrera, and Juarez Decls. ¶¶ 20-23)  Additionally, Plaintiffs assert they were required to sign a

document misrepresenting their hours worked and never received any notification about their

pay rates as required under the NYLL.  (FAC ¶¶ 55-59; Maldonado, Cabrera, and Juarez Decls.

¶¶ 24-25)  Consequently, Plaintiffs seek unpaid minimum wages, overtime wage damages,

---

[1] Maldonado's Declaration sets out three dates for when he started employment with the Defendants: January 1, 2014 (Maldonado Decl. ¶ 12), June 1, 2014 (Maldonado Decl. ¶ 14) and September 1, 2014 (Maldonado Decl. ¶ 10).  For purposes of this report and recommendation, the Court uses September 1, 2014, since it was the first date that was put in his Declaration and is in the paragraph directed specifically to his dates of employment.

spread of hours wage payments, liquidated damages, statutory damages, prejudgment interest, post-judgment interest, attorneys' fees, and costs.  The details of the work performed and amounts claimed are discussed below.

## PROCEDURAL HISTORY

Plaintiffs commenced this action on August 25, 2020.  (ECF No. 1.)  On December 1, 2020, Plaintiffs filed a First Amended Complaint ("FAC").  (ECF No. 12.)  Plaintiffs served the FAC on all Defendants by personal service on December 4, 2020 (ECF No. 20.) and December 8, 2020. (ECF Nos. 18, 21.)  The FAC asserts the following causes of action: (1) violation of the minimum wage provisions of the FLSA; (2) violation of the overtime provisions of the FLSA; (3) violation of the New York minimum wage act; (4) violation of the overtime provisions of the New York State Labor Law; (5) violation of the spread of hours wage order of the New York Commissioner of Labor; and (6) a number of violations of the New York Labor Law including violation of the notice and recordkeeping requirements, violation of wage statement requirements, improper charging of equipment cost, unlawful deductions from wages, and violation of the pay frequency rules.  (ECF No. 12.)

Defendants did not file an answer or otherwise move with respect to the FAC, and the Clerk of the Court entered a certificate of default on February 4, 2021.  (ECF Nos. 31, 32.)  On March 4, 2021, Plaintiffs submitted a request to enter a default judgement and provided information on damages with a supporting declarations.  (ECF No. 42.)  These papers were served on Defendants on March 8, 2021. (ECF Nos. 47, 48.)  On April 1, 2021, Defendants failed to appear at a show cause hearing. (ECF No. 50.)  On June 21, 2021, this Court held a telephonic inquest hearing.  Despite being given notice of the hearing, Defendants did not appear or file

any submissions.  The following recommendations are based on the facts asserted in the FAC, as well as evidence presented in Plaintiffs' declarations and moving papers.

## DISCUSSION

### I.      Default Judgment

Federal Rule of Civil Procedure ("Rule") 55 governs judgments against a party that has failed to plead or otherwise defend itself in an action.  *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61 (2d Cir. 1981) (defendant's ongoing failure to appear supported failure to plead for the purpose of entry of default).  Rule 55 requires a two-step process for an entry of a default judgement.  *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95 (2d Cir. 1993).  First, upon notification from the moving party, the court clerk enters a default of the party who failed to defend. *Priestley v. Headminder, Inc*., 647 F.3d 497, 505 (2d Cir. 2011) (citing Fed. R. Civ. P. 55(a)). Second, once the clerk issues a certificate of default, the moving party may apply for entry of default judgment pursuant to Rule 55(b).  *Id*.  A default constitutes an admission of all well-pleaded factual allegations in the complaint, and the allegations as they pertain to liability are deemed true.  *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.,* 973 F.2d 155, 158 (2d Cir. 1992).  However, plaintiffs are not entitled to a default judgment as a matter of right merely because the opposing party is in default.  *Finkel v. Universal Elec. Corp*., 970 F. Supp. 2d 108, 118 (E.D.N.Y. 2013).  Plaintiffs bear the burden to demonstrate that their uncontroverted allegations, without more, establish the defendant's liability on each asserted cause of action. *La Barbera v. Fed. Metal & Glass Corp*., 666 F. Supp. 2d 341, 348 (E.D.N.Y. 2009).

To determine whether a motion for default judgment is warranted, courts within this district consider three factors: (1) whether the defendant's default was willful; (2) whether the

defendant has a meritorious defense to plaintiff's claims; and (3) the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment. *Guggenheim Capital, LLC v. Birnbaum*, 722 F.3d 444, 455 (2d Cir. 2013) (applying these factors in review of lower court's grant of a default judgment).

Here, Plaintiffs have satisfied the two-step procedural requirements of Rule 55 by submitting a request for both entry of default and default judgment following the issuance of the clerk's certification.  (ECF. Nos. 30, 42.)  Additionally, all three of the foregoing factors weigh in Plaintiffs' favor.  The Defendants' failure to make an appearance and to respond to either Plaintiffs' FAC or Motion for a Default Judgment are indicative of willful conduct. (ECF Nos. 47, 48.)  *See Am. All. Ins. Co. v. Eagle Ins. Co.*, 92 F.3d 57, 60 (2d Cir. 1996) (Second Circuit courts look for evidence of bad faith or more than mere negligence to satisfy the willfulness standard). Defendants cannot assert any meritorious defenses to Plaintiffs' claims because they failed to make an appearance.  *Fermin v. Las Delicias Peruanas Rest., Inc.*, 93 F. Supp. 3d 19, 31 (E.D.N.Y. 2015) (court reasoned that a meritorious defense cannot be established where the defendant has not filed an answer).  And, Plaintiffs will be prejudiced if denied the ability to seek judgment by default because the Plaintiffs will have no alternative legal redress to recover the amounts due to them for the work performed during their employment.

Generally, a defendant's default is an admission of the plaintiff's well-pleaded allegations as to liability but not for purposes of determining damages.  *See Greyhound Exhibitgroup*, 973 F.2d 155, 158 (2d Cir. 1992).  Even when a defendant has defaulted, a substantive analysis of the alleged claims is required to determine whether the plaintiff may be awarded damages, and proof of damages is required.  *Flaks v. Koegel*, 504 F.2d 702, 707 (2d Cir.

1974).  Below I first address the Defendants' liability with respect to the FLSA and NYLL based on the allegations in the FAC and Plaintiffs' declarations.  Then I address damages.

II.    **Liability**

    a.  **Unpaid Wages Under the FLSA and NYLL**

The FLSA was enacted by Congress to "protect all covered workers from substandard wages and oppressive working hours, 'labor conditions [that are] detrimental to the maintenance of the minimum standard of living necessary for the health, efficiency and general well-being of workers.'" *Barrentine v. Arkansas-Best Freight Sys. Inc.,* 450 U.S. 728, 739, 101 S. C.t 1437, 67 L.Ed. 2d 641 (1981) (quoting 29 U.S.C. § 202(a)).  To establish a claim under the FLSA, a plaintiff must show that: (1) he or she was an "employee" of the defendants, as defined by the statute; (2) that the defendants were employers engaged in commerce; and (3) that the employment relationship was not exempt from the FLSA.  *See Dejesus v. HF Mgmt. Servs., LLC, 72*6 F.3d 85, 90 (2d Cir. 2013) (plaintiff alleged facts about employment status and duties to satisfy FLSA claim).

Section 206 of the FLSA sets forth the minimum hourly wage that employers must pay their employees. *Id.* 29 U.S.C. § 206(a)(1)(C).  Section 207 specifies that an employer must pay employees who work more than forty hours during a workweek for the excess hours "at a rate not less than one and one-half times the regular rate at which [they are] employed." 29 U.S.C. § 207(a)(1).  There is a presumption that an employee is entitled to overtime; an employer bears the burden of proving that an employee is exempt from overtime.  29 USC § 207(a)(1); *Bilyou v. Dutchess Beer Distributors, Inc.,* 300 F.3d 217, 222 (2d Cir. 2002) (recognizing that exempt status under the FLSA is an affirmative defense).  Employers who violate the FLSA's minimum

wage and overtime provisions are liable for the amount of unpaid wages and an additional

equal amount as liquidated damages. 29 USC § 216(b).

New York's Labor law is the state analogue to the federal FLSA.  Although the Labor Law

"does not require a plaintiff to show either a nexus with interstate commerce or that the

employer has any minimum amount of sales," it otherwise mirrors the FLSA in compensation

provisions regarding minimum hourly wages and overtime.  *Ramos v. Baldor Specialty Foods,*

*Inc.,* 687 F.3d 554, 556 (2d Cir. 2012).  The New York Labor Law also expressly provides that

employees are entitled to recover all unpaid wages and liquidated damages at a rate of 100

percent of the wages due. *See* N.Y. Lab. Law § 198(3); *Chun Jie Yin*, 2008 WL 906736, at *6;

*Jowers v. DME Interactive Holdings, Inc.,* No. 00 Civ. 4753, 2006 WL 1408671, at *9 (S.D.N.Y.

May 22, 2006).

New York's minimum wage was at all relevant times higher than the federal minimum

wage.[2] § 7:89. Hospitality Industry Minimum Wage Order, 13A N.Y. Prac, Employment Law in

New York § 7:89 (2d ed.); *see also* Dept. of Lab. New York City Minimum Wage rates at

https://dol.ny.gov/minimum-wage-0 (last visited July 16, 2021).   Under applicable law,

Plaintiffs are entitled to New York's more generous minimum wage and overtime rates.  *Gao v.*

*Jian Song Shi,* No. 18 CV 2708 (ARR)(LB), 2021 WL 1949275, at *11 (E.D.N.Y. Apr. 30,

2021), *report and recommendation adopted sub nom. Bin Gao v. ABC Corp.,* No.

---

[2] The federal minimum wage during Plaintiffs' employment was $7.25 per hour.  29 U.S.C. § 206(a)(1). The federal overtime rate is 1.5 x the employee's regular hourly rate.  29 U.S.C. § 207(a)(1).  In New York City, the minimum wage for employees in restaurants with more than 11 employees was $8 per hour in 2014; $8.75 per hour from December 31, 2014 through December 30, 2015; $9.00 per hour from December 31, 2015 to December 30, 2016; $11 per hour from December 31, 2016 to December 30, 2017; $13 per hour from December 31, 2017 to December 30, 2018; and $15 per hour from December 30, 2018 to the end of Plaintiffs' employment. Art. 19 NYLL Sec. 652. The overtime rate also is 1.5 times the regular rate. Hospitality Industry Wage Order 146-1.4.

18CV2708ARRLB, 2021 WL 1946322 (E.D.N.Y. May 15, 2021) (Court applied NY's minimum wage damages because they are more generous under the NYLL than under FLSA.)

Here, Plaintiffs all attested that Defendants were their employer and that they were employed by Defendants.  (FAC ¶ 33; Maldonado, Cabrera, and Juarez Decls. ¶¶ 3, 5.)  They assert that Defendants hired them, supervised and controlled their work schedules, and determined the rate and method of compensation in exchange for their work. *Id. Rahman v. Red Chili Indian Café, Inc.,* 17-cv-5156, 2021 WL 2003111 (S.D.N.Y. May 19, 2021) (in default judgment context, finding allegations in complaint that restaurant and its owner had the power to hire and fire employees and set wages was sufficient to establish that both the entity and its owners were employers under the FLSA); *see also* 29 U.S.C. § 203(d, e); NY LL 190(2, 3); *Irizarry v. Catsimatidis,* 722 F.3d 99, 104–111 (2d Cir. 2013) (An "employer" may include an individual owner who exercises sufficient operational control over employees).  Thus, Plaintiffs have met the requirement of demonstrating that Defendants were employers and that they were employees.

Plaintiffs also attest that the restaurant did more than $500,000 in business, thereby meeting the statutory threshold for coverage under the FLSA.  29 USC § 203(s)(1)(A)(i)-(ii).  (FAC ¶ 34.)  Additionally, the FAC asserts that Defendants were directly engaged in interstate commerce by, for example, using on a daily basis goods produced outside of the State of New York.  (FAC ¶ 35.)   This is sufficient to demonstrate that Defendants were engaged in commerce.  *Rahman*, 2021 WL 2003111 (S.D.N.Y. May 19, 2021).

Finally, while the FLSA exempts certain employees from minimum wage and overtime wage protections, general laborers carrying out work such as cooking, dishwashing and food

preparation at a restaurant generally are not exempt. *See, e.g., Solis v. SCA Rest. Corp.*, 938 F. Supp. 2d 380, 398 (E.D.N.Y. 2013) (finding that chef was not exempt from overtime eligibility). And, given the presumption that an employee is entitled to overtime and Defendants failure to appear and meet their burden that Plaintiffs fall under a specific exemption, Plaintiffs have satisfied their entitlement to unpaid wages, including overtime, under the FLSA.

Because the analysis under New York law is the same, Plaintiffs also have satisfied their burden in demonstrating Defendants' exposure to liability under the New York Labor law. *Debejian v. Atl. Testing Labs., Ltd.,* 64 F. Supp. 2d 85, 87, n. 1 (N.D.N.Y. 1999) (finding New York Labor Law provisions "substantially similar to the federal scheme" such that its analysis of federal law would apply equally to claims brought under the FLSA and New York law).

I turn next to Plaintiffs' allegations regarding their hours worked and pay to assess whether they have demonstrated that they are entitled to unpaid minimum wage and/or overtime under federal and/or state law. Plaintiffs each provided a declaration detailing their hours worked, days in the restaurant and work schedules. Additionally, Plaintiffs allege that Defendants regularly required Plaintiffs to work in excess of forty hours per week, failed to pay them overtime, failed to provide any wage statement or notice of accounting for actual hours worked, and made a $22 dollar weekly deduction from their wages for meals they never were provided or ate. (FAC ¶¶ 10, 53, 76, 100, 122, 141, 144, 154, 163; Maldonado, Cabrera, and Juarez Decls. ¶¶ 18-27.)

i.  <u>Plaintiff Maldonado</u>

From approximately September 1, 2014 until on or about August 31, 2019, Plaintiff Maldonado worked from approximately 8:30 a.m. until on or about 9:00 p.m. Mondays and

Wednesdays and from approximately 9:00 a.m. until on or about 5:30 p.m. Tuesdays, Thursdays, Fridays, and Saturdays (typically 59 hours per week). (FAC ¶ 43.)  From approximately September 1, 2019 until on or about March 22, 2020, Plaintiff Maldonado worked from approximately 9:00 a.m. until on or about 9:00 p.m., Mondays and Wednesdays and from approximately 9:00 a.m. until on or about 5:30 p.m., Tuesdays, Thursdays, Fridays and Saturdays (typically 58 hours per week). (FAC ¶ 44.)  Maldonado was paid $15 per hour in 2014; $16 per hour from 2015-2016; $17 per hour for 2017; and $18 per hour from 2018-2020. (Maldonado Decl. ¶¶ 14-17.)

    ii. <u>Plaintiff Cabrera</u>

   From approximately January 1, 2014 until on or about March 22, 2020, Plaintiff Cabrera worked from approximately 3:00 p.m. until on or about 11:00 p.m., 4 days a week and from approximately 3:00 p.m. until on or about 11:30 p.m., 2 days a week (typically 49 hours per week).  Cabrera was paid $15 per hour from 2014-2018; $16 per hour from January 1, 2019 to November 30, 2019; $17 per hour from December 1, 2019 to February 29, 2020; and $18 per hour from March 1, 2020 to March 22, 2020.  (Cabrera Decl ¶¶ 13-16.)

    iii. <u>Plaintiff Juarez</u>

   Plaintiff Juarez worked for the Defendants at three different time periods.  From approximately May 1, 2016 until on or about March 15, 2020, Juarez worked from approximately 3:00 p.m. until on or about 12:00 a.m., 6 days a week (typically 54 hours per week).  From approximately May 16, 2020 until on or about July 26, 2020, Plaintiff Juarez worked from approximately 1:00 p.m. until on or about 9:00 p.m., 3 days a week (typically 24 hours per week).  From approximately July 27, 2020 until on or about August 12, 2020, Plaintiff

Juarez worked from approximately 3:00 p.m. until on or about 10:00 p.m., 5 days a week

(typically 35 hours per week).  For the period of May 1, 2016 until on or about March 15, 2020,

Plaintiff worked in excess of 40 hours per week and was not compensated for his overtime

wages at the time and a half rate.   Plaintiff Juarez did not work in excess of 40 hours per week

in the other periods and thus does not qualify for any overtime for those periods.  Juarez was

paid $11 per hour from May 1, 2016 until December 31, 2017; $13 per hour for 2018; and $15

per hour from January 1, 2019 to August 12, 2020.  (Juarez Decl. ¶¶ 15-17.)

Based on the information proffered by Plaintiffs, Maldonado and Cabrera did not work

at a rate below the minimum wage requirements of either federal or state law even when

taking into account the $22 weekly deduction from wages.  At all relevant times during their

employment, both Plaintiffs were making far more per hour than the minimum wage in New

York City, which is also above the federal minimum wage rate.  Thus, neither has a minimum

wage claim.  However, neither was paid time and a half for their overtime hours.  Instead, they

were paid the same hourly rate for all hours worked.  Thus, they were not paid their full

overtime for hours worked in excess of forty in a week.

Juarez, like the other Plaintiffs, was paid a fixed hourly rate for all hours worked.  Thus,

to the extent he worked over 40 hours in a week, he is due additional overtime pay.  Like the

other Plaintiffs, Juarez also was paid above the federal minimum wage, as he was paid well in

excess of $7.25 an hour during his employment.  But, while his stated hourly rates were

consistent with New York City minimum wage rates for restaurant workers, the weekly

deduction of $22 per week resulted in him being paid less than the minimum wage under state

law.  Thus, he has stated a claim for a minimum wage violation under state law.  To compute

the amount of underpayment, the Court divides the $22 by the number of hours worked in a

week to determine the hourly underpayment (but does not also include the additional half-time

amount he is entitled to for period when he worked more than forty hours in a week).  The

chart below shows the effective underpayment to his hourly pay.

| Time Period | Wage Paid | New York City Minimum Wage Rate | No. of Hours Worked / Week | Amount of Hourly Underpayment |
|---|---|---|---|---|
| May 1, 2016 – Dec. 31, 2016 | $11.00 | $9.00 | 54 | .41 ¢ |
| Jan. 1, 2017 – Dec. 31, 2017 | $11.00 | $11.00 | 54 | .41 ¢ |
| Jan. 1, 2018 – Dec. 31, 2018 | $13.00 | $13.00 | 54 | .41 ¢ |
| Jan. 1, 2019 – March 15, 2020 | $15.00 | $15.00 | 54 | .41 ¢ |
| May 16, 2020 – July 26, 2020 | $15.00 | $15.00 | 24 | .92 ¢ |
| July 27, 2020 – Aug. 12, 2020 | $15.00 | $15.00 | 35 | .63 ¢ |

**b.  New York Labor Law Spread of Hours Pay**

Plaintiffs also seek damages for non-payment of so-called "spread of hours" pay.  Under

New York law, certain employees who work more than ten hours in a day can recover an extra

hour's worth of pay at the state minimum wage rate for each such day. N.Y. Comp. Codes R. &

Regs. Tit. 12, § 142-2.4.  Section 663 of the Labor Law expressly authorizes an employee to sue

his or her employer to recover unpaid wages otherwise due to him or her under the statute. N.Y. Lab. Law § 663(1).

Plaintiff Maldonado is the only Plaintiff who attests that he worked more than ten hours a day; he did so on Mondays and Wednesdays from approximately January 1, 2014 until March 22, 2020.  (Maldonado Decl. ¶¶ 12, 13.)  Thus, Plaintiff Maldonado has established he is entitled to spread of hours pay for these days.  *Fermin v. Las Delicias Peruanas Rest., Inc.,* 93 F. Supp. 3d 19 (E.D.N.Y. 2015) (Restaurant employees were entitled to recover spread–of–hours pay pursuant to NYLL, where employees at times worked in excess of ten hours in per day, and employer failed to pay them NYLL minimum wage.); 12 N.Y.C.R.R. § 142–2.4.  Neither Cabrera nor Juarez attested to working ten or more hours in a single day.

### c.   Calculation of Damages

Plaintiffs' counsel submitted a computation of damages, but this Court finds that there are significant errors in the computation.  To start, they request damages for Maldonado and Cabrera outside the statute of limitations period.  Claims under the FLSA are subject to a two-year statute of limitations if the violation is not willful and a three-year statute of limitations if the violation is willful.  *See Pineda v. Masonry Const. Inc.*, 831 F. Supp. 2d 666, 674 (S.D.N.Y. 2011) (citing 29 U.S.C. § 255(a)).  When defendants are in default, the court may accept the plaintiff's allegation that the defendants' violation was willful, such that a three-year statute of limitations would apply in this case.  *See Angamarca v. Pita Grill 7 Inc.*, No. 11-cv-7777 (JGK) (JLC), 2012 WL 3578781, at *4 (S.D.N.Y. Aug. 2, 2012) (accepting plaintiff's allegation of defendants willful violation where defendants defaulted).  Claims brought pursuant to the NYLL are subject to a six-year statute of limitations.  *See Pineda*, 831 F. Supp. 2d at 674 (citing NYLL §

663(1), (3)).   In this case, state law provides the more generous computation of damages and thus the state statute of limitations period is the relevant one, as all Plaintiffs were employed more than three years.  *See Elisama v. Ghzali Gourmet Deli Inc.*, No. 14-cv-8333 (PGG) (DF), 2016 WL 11523365, at *11 (S.D.N.Y. Nov. 7, 2016) (applying NYLL's six-year statute of limitations because it provided the greatest measure of relief), *adopted by* 2018 WL 4908106 (S.D.N.Y. Oct. 10, 2018); *Gamero v. Koodo Sushi Corp.*, 272 F. Supp. 3d 481, 498, 515-16 (S.D.N.Y. 2017) (same), *aff'd,* 752 F. App'x 33 (2d Cir. 2018)*; Hernandez v. Jrpac Inc.*, No. 14-cv-4176 (PAE), 2016 WL 3248493, at *31 (S.D.N.Y. June 9, 2016) ("Plaintiffs damages award under the NYLL necessarily will encompass their award under the FLSA.  While the Court will formulate a separate damages award for each claim, as a matter of economic reality, for each plaintiff, the NYLL award will be decisive.")

This case was filed on August 21, 2020, meaning that claims for unpaid wages before August 21, 2014 are time-barred. N.Y. Labor Law § 663(3).  Therefore, even though Cabrera began work on January 1, 2014 according to his declaration, his damages computation begins on August 21, 2014–six years before this action was filed.  Maldonado began working on or about September 1, 2014 and Juarez began working on May 1, 2016; thus, the damages for both Maldonado and Juarez begin on their dates of hire.   Plaintiffs' counsel's computations inexplicably included damages for periods before the statute of limitations and even before Maldonado's date of hire.  This has necessitated recomputation by the Court.

Plaintiffs' counsel also incorrectly computed the overtime rate due.  To calculate overtime, the Court must multiply the number of hours worked in a week beyond 40 by the overtime rate.  However, where, as here, Plaintiffs attested that they received their straight

time rate for all hours worked (Maldonado, Cabrera, and Juarez Decls. ¶¶ 13-17), they are only

due their half-time rate for hours worked in excess of forty in a week. *Polanco v. Brookdale*

*Hosp. Med. Ctr.,* 819 F. Supp. 2d 129, 132 (E.D.N.Y. 2011) (employers must pay employees at a

rate of not less than one and one-half times the employee's regular rate for hours worked in

excess of forty hours per week. *Id.* § 207(a).) That is, Plaintiffs already received their regular

rate, so they are entitled only to the additional .5 times their regular rate for the overtime

hours. Plaintiffs' counsel utilized the time and a half rate instead of the half time rate. This too

has necessitated recomputation by the Court. Plaintiffs' counsel also included overtime

amounts for weeks when Juarez worked less than 40 hours by his own attestation. Juarez is not

entitled to overtime in weeks when he worked fewer than 40 hours. This also has necessitated

recomputation by the Court. The Court's computations for each Plaintiff's unpaid overtime

based on their respective declarations is as follows:

Plaintiff Maldonado's Overtime Compensation Due:

| Time Period Covered | Number of Weeks in Time Period Covered | No. of Hours worked Excess of 40 Hours | ½ of Regular Rate in Dollars | Unpaid Overtime Wages Per Week | Total Overtime Wages for Time Period[3] |
|---|---|---|---|---|---|
| Sept. 1, 2014 – Dec 31, 2014 | 17.2 | 19 | $7.5 | 142.5 | $2,442.40 |
| Jan 1, 2015 – Dec 31, 2016 | 104 | 19 | $8 | 152 | $15,808.00 |
| Jan. 1 2017 – Dec 31, 2017 | 52 | 19 | $8.5 | 161.5 | $8,398.00 |
| Jan 1, 2018 – Aug. 31, 2019 | 86.5 | 19 | $9 | 171 | $14,791.50 |
| September 1, 2019 – | 29 | 18 | $9 | 162 | $4,698.00 |

---

[3] The Court arrives at this total by multiplying the half-time rate by the number of hours in excess of 40 worked in a week by the number of weeks in the applicable period.

| March 22, 2020 | | | | | |
|---|---|---|---|---|---|
| | | | | **TOTAL** | **$46,137.90** |

Plaintiff Cabrera's Overtime Compensation Due:

| Time Period Covered | Number of Weeks in Time Period Covered | No. of Hours worked Excess of 40 Hours | ½ of Regular Rate | Unpaid Overtime Wages Per Week | Total Overtime Wages for Time Period |
|---|---|---|---|---|---|
| Aug. 21, 2014 – Dec 31, 2018 | 227.4 | 9 | 7.5 | 67.5 | $15,349.50 |
| Jan 1, 2019 – Nov. 30, 2019 | 47.4 | 9 | 8 | 72 | $3,412.80 |
| Dec. 1 2019 – Feb. 29. 2020 | 12.6 | 9 | 8.5 | 76.5 | $963.90 |
| March 1, 2020 – March 22, 2020 | 3 | 9 | 9 | 81 | $243.00 |
| | | | | | |
| | | | | **TOTAL** | **$19,969.20** |

Plaintiff Juarez's Overtime Compensation Due:

| Time Period Covered | Number of Weeks in Time Period Covered | No. of Hours worked Excess of 40 Hours | ½ of Regular Rate | Unpaid Overtime Wages Per Week | Total Overtime Wages for Time Period |
|---|---|---|---|---|---|
| May 1, 2016 to Dec. 31, 2017 | 87 | 14 | 5.5 | 77 | $6,699.00 |
| Jan 1, 2018 – Dec. 31, 2018, | 52 | 14 | 6.5 | 91 | $4,732.00 |
| Jan. 1 2019 – March 15, 2020 | 62.5 | 14 | 7.5 | 105 | $6,562.50 |
| | | | | | |

| | | | | **TOTAL** | **$17,993.50** |
|---|---|---|---|---|---|

Thus, I recommend that the Court award the following overtime wages to Plaintiffs: $46,137.90 for Plaintiff Maldonado; $19,969.20 for Plaintiff Cabrera; and $17,993.50 for Plaintiff Juarez.

### i.   Unlawful Deductions

The FLSA and the NYLL allow employers to deduct the cost of certain meals from their employees' wages.  Under the FLSA, the employer bears the burden of proving both the actual costs of the meal and their reasonableness for employers to deduct the cost of meals from their employees' wages. Fair Labor Standards Act of 1938 § 3, 29 U.S.C.A. § 203(m); 29 C.F.R. § 531.3(a); *Ke* v. *Saigon Grill, Inc.*, 595 F.Supp.2d 240, 256–57 (S.D.N.Y. 2008).  In New York, "[m]eals . . . provided by an employer to an employee may be considered part of the wages paid to the employee but shall be valued at no more than . . . $2.50 per meal." *Jrpac*, 2016 WL 3248493, at *26 (quoting 12 N.Y.C.R.R. § 146–1.9).

Plaintiffs assert that Defendants deducted $22 per week from their wages for meals but never gave them meals or any other type of break and, therefore, they should be entitled to recover $22 per week during the time of their employment. (ECF No. 42, ¶¶ 35, 46, 61; Maldonado, Cabrera, and Juarez Decls. ¶¶ 20, 22.)  The Court agrees that Plaintiffs are entitled to the return of the money deducted from their pay as Defendants have defaulted and thus failed to demonstrate the actual costs of meals or that meals were even provided.  Plaintiffs failed to separately compute the amount they were due for these deductions, again necessitating a computation by the Court.  The following chart provides the amount owed to

the Plaintiffs and is computed by multiplying the number of weeks each Plaintiff worked during their period of employment by $22.

| Plaintiff | Period of Employment | Number of weeks in Employment | Unlawful Deduction | Wages Owed |
|---|---|---|---|---|
| Maldonado | September 1, 2014 – March 22, 2020 | 289.6 | $22 | $6,371.20 |
| Cabrera | August 21, 2014 – March 22, 2020 | 291.3 | $22 | $6,408.60 |
| Juarez | May 1, 2016 – August 12, 2020 | 223.3 | $22 | $4,912.60 |

In sum, Plaintiffs should be awarded additional compensation for Defendant's unlawful deductions as follows: Plaintiff Maldonado: $6,371.20; Plaintiff Cabrera: $6,408.60; and Plaintiff Juarez: $4,912.60.

### ii.   Spread of Hours Pay Under New York's Labor Law

As noted above, only Maldonado's declaration supports a spread of hours award because he is the only one who attested to working more than 10 hours in any day.  Maldonado attested he worked over ten hours a day twice a week for the period September 1, 2014 through March 22, 2020 and thus is entitled to spread of hours pay for such days.   Because the relevant minimum wage changed during the period when Maldonado worked more than ten hour days, the Court sets out the spread of hours pay due for each period in the chart below.

| Date Range | New York Minimum Wage Rate | Number of weeks with Spread of Hours during time period | Amount Due for Spread of Hours[4] |
|---|---|---|---|
| Sept. 1, 2014-Dec. 31, 2014 | $8.00 | 17.2 | $275.20 |
| Jan. 1. 2015 – Dec. 31, 2015 | $8.75 | 52 | $910.00 |
| Jan. 1, 2016 -Dec. 31, 2016 | $10.50 | 52 | $1,092.00 |
| Jan. 1, 2017 – Dec. 31, 2017 | $12.00 | 52 | $1,248.00 |
| Jan. 1, 2018 – Dec. 31, 2018 | $13.50 | 52 | $1,404.00 |
| Jan. 1, 2019 – Aug. 31, 2019 | $15.00 | 34.4 | $1,032.00 |
| Sept. 1, 2019 – Dec. 31, 2019 | $15.00 | 17.2 | $516.00 |
| Jan. 1, 2020 – March 22, 2020 | $15.00 | 11.4 | $342.00 |
| | | | |
| | | TOTAL: | $6,819.00 |

Thus, Plaintiff Maldonado is entitled to $6,819.00 in spread of hours pay under the New

York Labor Law.

### iii.   Liquidated Damages

Plaintiffs seek liquidated damages under both the FLSA and New York's Labor Law.

Both laws provide for liquidated damages in an amount equal to the unpaid wage.  Plaintiffs

cannot recover liquidated damages under both statutes. *See Rana v. Islam*, 887 F.3d 118, 122-

23 (2d Cir. 2018).  Under the NYLL, "liquidated damages are presumed unless defendants can

show subjective good faith." *Zubair v. EnTech Eng'g, P.C.*, 900 F. Supp. 2d 355, 360 n.3 (S.D.N.Y.

---

[4] The Court arrived at this number by multiplying the applicable minimum wage rate by 2 for the two work days per week when Plaintiff worked more than ten hours and then multiplying that figure by the number of weeks in the time period.

2012); see N.Y. Lab. Law § 663(1).  As Defendants have defaulted, they have not established good faith to rebut the liquidated damages presumption.  Accordingly, the Court computes liquidated damages only under the New York Labor Law for the six-year period.

Based on the total amounts due to each of the Plaintiffs based on the above charts, I calculate the total unpaid wages (comprising unpaid overtime, minimum wage, improper deductions and spread of hours) to be the following:

|  | Unpaid Overtime | Spread-of-Hours | Improper Deductions | Total Amount of Unpaid Wages |
|---|---|---|---|---|
| Maldonado | $46,137.90 | $6,819.00 | $6,371.20 | **$59,328.10** |
| Cabrera | $19,969.20 | n/a | $6,408.60 | **$26,377.80** |
| Juarez | $17,993.50 | n/a | $4,912.60 | **$22,906.10** |

Thus, I recommend liquidated damages be awarded in the same amount as the total unpaid wages for each of the Plaintiffs.

### iv.    Prejudgment Interest

Plaintiffs also request and are entitled to prejudgment interest under the NYLL. *See* N.Y. Lab. Law § 663; *Fermin v. Las Delicias Peruanas Rest., Inc.*, 93 F. Supp. 3d 19, 48 (E.D.N.Y. 2015) ("In contrast to the FLSA, the NYLL permits an award of both liquidated damages and prejudgment interest."). "Prejudgment interest is calculated on the unpaid wages due under the NYLL, not on the liquidated damages awarded under the state law." *Fermin*, 93 F. Supp. 3d at 49 (quoting *Mejia v. East Manor USA Inc.*, No. 10 CV 4313, 2013 WL 3023505, at *8 n.11

(E.D.N.Y. Apr. 19, 2013) (internal brackets removed), *report and recommendation adopted*, 2013 WL 2152176 (E.D.N.Y. May 17, 2013)).

The statutory rate of interest is nine percent per annum. N.Y. C.P.L.R. § 5004.  Where damages were incurred at various times, interest may be calculated from a single reasonable intermediate date. *Id*. § 5001(b).  The midpoint of a plaintiff's employment is a reasonable intermediate date for purposes of calculating prejudgment interest. *See Fermin*, 93 F. Supp. 3d at 49.

For Cabrera who began his employment on January 1, 2014 and terminated his employment on March 22, 2020, the midpoint is February 10, 2017.  For Maldonado who began employment on September 1, 2014 and terminated his employment on March 22, 2020, the midpoint is July 10, 2017.  This midpoint is the same for Maldonado's spread-of-hours pay.  For Juarez, who began his employment May 1, 2016 and terminated his employment on March 15, 2020, the midpoint is April 6, 2018.  The following represents the Court's computation of pre-judgement interest for the Plaintiffs:

| | Dates Employed | Midpoint Date | Unpaid Wages Damages | Calculate 9% per annum | Per Diem Rate | Days btwn. Midpoint and Today (July 16, 2021) | Amount Due |
|---|---|---|---|---|---|---|---|
| Maldonado | Sept. 1, 2014 – March 22, 2020 | July 10, 2017 | $46,137.90 | .09/365 | $11.38 | 1,467 days | $16,694.46 |
| Maldonado (Spread-Of-Hours Pay) | Sept. 1, 2014 – March 22, 2020 | July 10, 2017 | $3,409.60 | .09/365 | 0.84 cents | 1,467 days | $1,232.28 |
| Cabrera | Aug. 21, 2014 – March 22, 2020 | Feb. 10, 2017 | $19,969.20 | .09/365 | $4.92 | 1,617 days | $7,955.64 |

| Juarez | May 1, 2016 – Aug. 12, 2020 | April 6, 2018 | $17,993.50 | .09/365 | $4.43 | 1,197 days | $5,302.71 |
|--------|------------------------------|---------------|------------|---------|-------|------------|-----------|

### v.   Statutory Damages

Plaintiffs also seek statutory damages for Defendants' failure to provide wage notices and wage statements in compliance with New York's Wage Theft Prevention Act ("WTPA"), and NYLL § 195(1) and (3), which requires employers to "provide [their] employees, in writing . . . a notice containing . . . the rate or rates of pay thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other allowances." N.Y. Lab. Law. § 195(1) and (3).  NYLL § 198 sets the amount of statutory damages an employee may recovery for violations of NYLL § 195.

Regarding wage notices, in 2011, the WTPA required employers to provide written wage notices "at the time of hiring, and on or before February first of each subsequent year of the employee's employment with the employer." N.Y. Lab. Law § 195(1-a) (eff. Apr. 9, 2011 to Feb. 27, 2015).  Failure of the employer to follow this resulted in a $50 per week payment to the employee with a maximum recovery of $2,500 per employee.  Subsequently, the WTPA was amended, effective February 27, 2015, to provide that employers were only required to provide written wage notices "at the time of hiring" and/or within ten days of their hire date. 2014 N.Y. Laws ch. 537 § 1, amending N.Y. Lab. Law § 195(1-a).  Failure to follow this results in a $50 per day payment to the employee with a maximum recovery of $5,000.00 per employee. NYLL § 198(1-b).

All Plaintiffs attested that they never received a written wage notice at the time of hiring or anytime thereafter.  (Maldonado Decl. ¶ 24, Cabrera Decl. ¶ 23, Juarez Decl. ¶ 24.)

Because Defendants are in default, this Court accepts Plaintiffs' allegation that Defendants failed to provide them with the required notices. *See Xochimitl v. Pita Grill of Hell's Kitchen, Inc.*, No. 14-cv-10234 (JGK) (JLC), 2016 WL 4704917, at *14 (S.D.N.Y. Sept. 8, 2016) (awarding plaintiff statutory damages under NYLL § 195(1) and (3) where defendants defaulted), *adopted sub nom. by Xochimitl v. Pita Grill of Hell's Kitchen, Inc*, No. 14-cv-10234 (JGK), 2016 WL 6879258 (S.D.N.Y. Nov. 21, 2016).  Plaintiffs Maldonado and Cabrera began their employment prior to the 2015 amendment, which required employers to provide wage notices at the time of hiring and on or before February of each subsequent year of employment.  According to the 2011 WTPA, this would entitle them to the maximum recovery of $2,500 per employee. N.Y. Lab. Law § 195(1-a) (eff. Apr. 9, 2011 to Feb. 27, 2015).  However, at least one court in the District has permitted a plaintiff to recover the cap established by the 2015 amendment when the plaintiff's wage rate changed after the amendment. *Cuzco v. F & J Steaks 37th Street LLC*, No. 13-CV-1859, 2014 WL 2210615, at *4 (S.D.N.Y. May 28, 2014).  Because Plaintiffs Maldonado and Cabrera both had a wage increase that changed after the February 27, 2015 amendment for which they should have received a notice, they should be entitled to the recovery under the 2015 Amendment, which would entitle them to the maximum rate of $5,000.00.  Since Plaintiff Juarez began his employment after the 2015 Amendment and never received a wage notice, he is able to recover the maximum amount of $5,000.00 as well.

Regarding wage statements, the WTPA formerly entitled employees to recover statutory damages for violations of the wage statement requirement of $100 per work week, not to exceed $2,500." *Baltierra v. Advantage Pest Control Co*., No. 14 CV 5917, 2015 WL 5474093, at *10 (S.D.N.Y. Sept. 18, 2015) (citation omitted); *accord Inclan*, 95 F. Supp. 3d at 501; *see also*

2010 N.Y. Laws ch. 564 § 7, amending N.Y. Lab. Law § 198(1-d).  By amendment, effective

February 27, 2015, the law changed to allow employees to recover statutory damages of $250

dollars "for each work day that the violations occurred or continue to occur," not to exceed

$5,000. 2014 N.Y. Laws ch. 537 § 2, amending N.Y. Lab. Law § 198(1-d); *see also Zhang v. Red*

*Mtn. Noodle House Inc.*, No. 15 CV 628, 2016 WL 4124304, at *6 (E.D.N.Y. July 5, 2016), report

and recommendation adopted, 2016 WL 4099090 (E.D.N.Y. Aug. 2, 2016).

Plaintiffs asserted that they never received wage statements with their pay.

(Maldonado Decl. ¶ 24, Cabrera Decl. ¶ 23, Juarez Decl. ¶ 24.)  The applicable law provides for

$250 dollars in damages for each work day, totaling no more than $5,000. *See* N.Y. Lab. Law §

198(1-d).  Defendants failed to comply with § 195(3) throughout the period of Plaintiffs'

employment and for days beyond when the statutory cap was reached.  Thus, all Plaintiffs are

entitled to the $5,000 statutory maximum in damages.

Accordingly, I respectfully recommend that each Plaintiff be awarded statutory damages

in the amount of $10,000 for Defendants' failure to provide proper wage notices and

statements.

### d.  Attorneys' Fees

The FLSA and NYLL both provide for an award of reasonable attorneys' fees to successful

plaintiffs.  *See* 29 U.S.C. § 216(b); NYLL §§ 198(1-a), 663(1).  Plaintiffs are represented by the

firm Michael Faillace & Associates, P.C. and work was performed by attorneys Michael Faillace,

Clela Errington and a paralegal.  (ECF No. 42 ¶ 111.)  Plaintiffs seek an attorneys' fee award of

$13,600.00. *Id.*

Attorneys' fee awards are typically determined using the lodestar approach, or "the product of a reasonable hourly rate and the reasonable number of hours required by the case." *Millea v. Metro–North R.R.*, 658 F.3d 154, 166 (2d Cir. 2011) (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 183 (2d Cir. 2008)); *see also Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 553 (2010). "The reasonable hourly rate is the rate a paying client would be willing to pay," bearing in mind that "a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." *Arbor Hill*, 522 F.3d at 190. In assessing whether an attorney's hourly rate is reasonable, courts may rely on their own knowledge of a firms hourly rates. *See Gurung v. Malhotra*, 851 F. Supp. 2d 583, 596 (S.D.N.Y. 2012) (citing *Miele v. New York State Teamsters Conference Pension & Ret. Fund,* 831 F.2d 407, 409 (2d Cir. 1987)). "Courts in this District have determined in recent cases that a fee in the range of $250 to $450 is appropriate for experienced litigators in wage-and-hour cases." *Xochimitl*, 2016 WL 4704917, at *20 (finding a range of $250 to $450 per hour reasonable; collecting cases); *see also  Lopez v. Emerald Staffing, Inc.*, No. 18 CIV. 2788 (SLC), 2020 WL 915821, at *13 (S.D.N.Y. Feb. 26, 2020) ("In this district, courts generally award experienced wage-and-hour attorneys between $300 to $400 per hour").

In assessing whether the number of hours billed by the attorney is reasonable, courts consider "whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." *Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992) (citation omitted). Plaintiff bears the burden to produce "contemporaneous time records indicating, for each attorney, the date, the hours expended, and the nature of the work done."

*Scott v. City of N.Y.*, 626 F.3d 130, 133–34 (2d Cir. 2010) (citation omitted); s*ee also Fisher v. SD Prot. Inc.*, 948 F.3d 593, 600 (2d Cir. 2020).

District courts exercise "considerable discretion" in awarding attorneys' fees. *See D.B. ex rel. S.B. v. New York City Dep't of Educ.*, 18-CV-7898 (AT) (KHP), 2019 WL 6831506, at *1 (S.D.N.Y. Apr. 22, 2019) (internal quotation marks and citation omitted), *adopted by* 2019 WL 4565128 (S.D.N.Y. Sept. 20, 2019); *see also Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983); *McDaniel v. County. of Schenectady*, 595 F.3d 411 (2d Cir. 2010); *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany & Albany Cty. Bd. of Elections*, 522 F.3d 182, 190 (2d Cir. 2008).  However, when awarding attorneys' fees, the court must also "clearly and concisely state reasons supporting the award."  *Tackie v. Keff Enters. LLC*, No. 14–CV–2074 (JPO), 2014 WL 4626229, at *6 (S.D.N.Y. Sept. 16, 2014) (first citing *Hensley*, 461 U.S. at 437; then citing *Matusick v. Erie Cnty. Water Auth.*, 757 F.3d 31, 64 (2d Cir. 2014)) (awarding attorneys' fees under FLSA and NYLL).

### a.  Reasonable Hourly Rate

Michael Faillace is the managing member of the Faillace Firm, and has been practicing employment law since 1983.  (Errington Decl. ¶ 111.)  He seeks a rate of $450 per hour.  (*Id*.)  This rate is at the upper limit of what courts in this District have deemed reasonable for experienced litigators in wage-and-hour cases.  *See, e.g., Lopez*, 2020 WL 915821, at *13; *Xochimitl*, 2016 WL 4704917, at *20.  Courts in this District have also reduced Mr. Faillace's $450 rate to between $375 and $425 for work performed on cases lacking "any novel or complex legal or factual questions and in which the defendant has defaulted."  *Perez Garcia*, 2020 WL 1130765, at *12 (reducing Mr. Faillace's hourly rate to $400 in uncomplicated case

where defendants defaulted); *see also, e.g.*, *Xochimitl*, 2016 WL 4704917, at *20 (reducing Mr. Faillace's hourly rate to $425 where defendants defaulted); *Andrade v. 168 First Ave Rest. Ltd.*, 14 Civ. 8268 (JPO) (AJP), 2016 WL 3141567, at *11 (S.D.N.Y. June 3, 2016) (same), *adopted by* 2016 WL 3948101 (S.D.N.Y. July 19, 2016).  Because this action does not concern complex or novel legal issues, Defendants have defaulted, and there are numerous errors in Plaintiff's filings as detailed below, it is appropriate to reduce Mr. Faillace's hourly rate to $400.

Clela Errington is an associate at the firm with 8 years of experience in labor and employment law at a series of small firms.  (ECF No. 42. Errington Decl. ¶ 111(ii).)  Errington seeks an hourly rate of $350 per hour.  *Id.*  This hourly rate falls within the range that courts in this District have deemed reasonable for senior attorneys with similar experience in wage-and-hour cases. *See Sanchez Gallego v. Adyar Ananda Bhavean Corp.*, No. 16-CV-4631 (AJN), 2019 WL 131957, at *5 (S.D.N.Y. Jan. 8, 2019) (hourly rate of $350 per hour for senior associate at Faillace Firm was reasonable); *Reyes v. Lincoln Deli Grocery Corp.*, No. 17-CV-2732 (KBF), 2018 WL 2722455, at *8 (S.D.N.Y. June 5, 2018) (hourly rate of $350 per hour was appropriate for attorney with five years of employment law experience), *order clarified*, 2018 WL 3105070 (S.D.N.Y. June 25, 2018); *Liang Huo v. Go Sushi Go 9th Ave.*, No. 13-CV-6573 (KBF), 2014 WL 1413532, at *8 (S.D.N.Y. April 10, 2014) (finding $350 to be appropriate for an attorney with 10 years of experience, the majority of which was spent on employment matters); *see also generally Surdu v. Madison Glob.*, LLC, No. 15 CIV. 6567 (HBP), 2018 WL 1474379, at *10 (S.D.N.Y. Mar. 23, 2018) ("Courts of this Circuit commonly allow for hourly rates of $300 to $400 for experienced attorneys or partners in FLSA and NYLL wage-and-hour cases.") (collecting cases).

A paralegal at the Faillace Firm also worked on this case and was billed at an hourly rate of $100.  This hourly rate is considered to be reasonable in this District.  *See Perez Garcia*, 2020 WL 1130765, at *12 (finding hourly rate of $100 for paralegal reasonable in a labor and employment case brought by the Faillace Firm); *Williams v. Metro-N. R.R. Co.*, No. 1:17-CV-03847 (JGK), 2018 WL 3370678, at *8 (S.D.N.Y. June 28, 2018) (finding hourly rate of $100 reasonable), *adopted by* 2018 WL 3368713 (S.D.N.Y. July 10, 2018).

### b.  Reasonable Hours Expended

The timesheet submitted to the Court indicate that Mr. Faillace spent 13 hours working on this case, that Errington worked on this case for 17.4 hours, and the paralegal spent 18.9 hours working on the case.   When assessing whether the hours worked were reasonable, courts consider whether "'at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures.'"  *Williams*, 2018 WL 3370678, at *2 (quoting *Samms v. Abrams*, 198 F.Supp.3d 311, 322 (S.D.N.Y. 2016)); *see also Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992)).  "Hours that are excessive, redundant, or otherwise unnecessary, are to be excluded . . . and in dealing with such surplusage, the court has discretion simply to deduct a reasonable percentage of the number of hours claimed as a practical means of trimming fat from a fee application." *Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998) (internal citations and quotation marks omitted); *see also Williams*, 2018 WL 3370678, at *2.  Courts also consider the nature of the legal matter, reason for the fee award, whether the case involved complex issues "requiring particular attorney skills and experience [,which] may command higher attorney rates," and whether the case "require[ed] retention of a firm with the

resources needed to prosecute a case effectively." *Williams*, 2018 WL 3370678, at *3 (citing

*Arbor Hill Concerned Citizens Neighborhood Ass'n*, 522 F.3d at 185–87).

Plaintiffs have provided contemporaneous billing records which detail the hours

expended and dates and descriptions of the tasks performed. (ECF No. 42.)  Plaintiff seeks

reimbursement for the 49.30 hours of work, which is comprised of time preparing and

amending the complaint, clerical tasks and preparation for the default judgment.   However,

when looking at the hours spent, the Court finds that they are not reasonable.  This time is

excessive given that the complaint is of a cookie cutter nature and similar to almost every other

complaint filed by the Faillace firm in this District.

Moreover, there were substantial errors in the motion for default and damages papers,

indicating that whatever attorney hours were spent were few.  (ECF No. 42, Exh. 5.)  Among

other errors, Maldonado's one-page declaration identifies three different dates when he began

working for the Defendant.  It goes without saying that in a FLSA case, the duration of a

Plaintiff's work with the Defendants is of paramount importance to determine wages due, if

any.  This mistake is unacceptable.  What makes this error particularly egregious is that the

attorney timesheet indicates that attorneys "revise[d] client affidavits" multiple times yet never

caught these basic errors.  (ECF No. 42-11 at p. 5.)

Additionally, Plaintiffs' counsel cited the wrong minimum wage for New York City

restaurants, included a request for damages outside the statute of limitations, and even

requested two different amounts of money as the amount sough attorney's fees – one being

$14,404.60, the other $4,022.50. (ECF No. 42, ¶¶ 108, 113.)  Plaintiffs also request payment for

work done for Plaintiff (Santiago Herrera) who was dismissed from this action at Plaintiffs' counsel's request. (ECF No. 50.)

Errors like these beg the question of whether the time sheets are accurate and whether the time purportedly spent was truly worked.   These errors also demonstrate that the amount requested is excessive given the poor quality of the papers and inclusion of time for tasks and request for pay that are not appropriate given the outcomes in this case. *Vernon v. Port Authority of New York and New Jersey,* 220 F. Supp. 2d 223, 229 (S.D.N.Y. 2002) (If time records are inadequate the Court may reduce the award accordingly.); *see also Carrasco Flores v. NYC Pasta & Risotto Co. LLC,* No. 17CV6915LGSKNF, 2019 WL 8331463, at *3 (S.D.N.Y. Sept. 19, 2019) (Court determined that Plaintiffs – also represented by Michael Faillace – did not provide competent evidence to the Court to determine reasonable fees and found that awarding Plaintiffs attorney's fees was not warranted.)

Consequently, I recommend that the hours be cut in half, with the additional decrease in Faillace's rate as noted above.  *See Pascuiti v. New York Yankees*, 108 F. Supp. 2d 258, 268 (S.D.N.Y. 2000) (The Court reduced Plaintiffs attorney's fees request by 50%, for a total of 24.5 hours.); *Luciano v. Olsten Corp.,*109 F.3d 111, 117 (2d Cir. 1997) ("[A] district court can exclude excessive and unreasonable hours from its fee computation by making an across-the-board reduction in the amount of hours."); *see also Krumme v. WestPoint Stevens, Inc.,* 79 F. Supp. 2d 297, 310 (S.D.N.Y. 1999) (reducing overall request by 20% to account for duplicative and excessive charges).  The Court has recomputed the attorney's fees based on a reasonable amount of hours expended in this matter resulting in the following chart:

|  | Requested Rate | Hours Worked | Reduced Hours | Resulting Fee: |
|--|--|--|--|--|

| Michael Faillace | $450 (now $400) | 13 | 6.5 | $2,600.00 |
| Clela Errington | $350 | 17.4 | 8.7 | $3,045.00 |
| Paralegal | $100 | 18.9 | 9.45 | $945.00 |
| | | | **TOTAL:** | **$6,590.00** |

In sum, I recommend an award for attorney's fees in the amount of $6,590.00.

e. **Costs**

Both the FLSA and NYLL entitle prevailing plaintiffs in wage-and-hour actions to recover costs. 29 U.S.C. §216(b); NYLL §663(1). "An award of costs 'normally include[s] those reasonable out-of-pocket expenses incurred by the attorney and which are normally charged fee-paying clients.'" *Fisher v. SD Prot. Inc.*, 948 F.3d 593, 600 (2d Cir. 2020) (quoting *Reichman Bonsignore, Brignati & Mazzotta P.C.*, 818 F.2d 278, 283 (2d Cir. 1987)); *see also Perez Garcia*, 2020 WL 1130765 at *13.

Here, Plaintiff seeks to recover $905.60 in costs, including a filing fee of $400.00 and to effect service on the Defendants. These expenses are typically reimbursed under the FLSA's and NYLL's costs provisions. *See Xochimitl*, 2016 WL 4704917 at *22 (awarding costs for filing and process server costs). Plaintiffs provided an accounting – albeit briefly – of disbursements associated with these costs, including the dates service was attempted on the Defendants. (ECF No. 42, Exh. 11.) Accordingly, I recommend awarding Plaintiffs costs in the amount of $905.60 for the filing fee and to effect service.

f. **Post-Judgment Interest**

Although Plaintiffs' FAC requested an award of post-judgment interest, Plaintiffs have not provided any argument or justification for same in their default judgment motion. ECF No. 42 at p. 26.  Nevertheless, "the very language of 28 U.S.C. § 1961 ensures that an award of post-judgment interest is mandatory in any civil case where money damages are recovered." *Duffy v. Oyster Bay Indus., Inc.,* No. 10 Civ. 3205(ADS)(ETB), 2011 WL 2259798, at *3 (E.D.N.Y. Mar. 29, 2011), *report & recommendation adopted,* No. 10 Civ. 3205(ADS)(ETB), 2011 WL 2259749 (E.D.N.Y. June 2, 2011); *see generally Begum v. Ariba Disc., Inc.,* No. 12 Civ. 6620(DLC), 2015 WL 223780, at *8 (S.D.N.Y. Jan. 16, 2015) (awarding post-judgment interest in a FLSA and NYLL wage-and-hour case).  Thus, in *Tacuri v. Nithun Constr. Co.,* No. 14 Civ. 2908(CBA)(RER), 2015 WL 790060, at *12 (E.D.N.Y. Feb. 24, 2015), the court awarded the plaintiffs post-judgment interest, despite their failure to request post-judgment interest, on all sums awarded concerning their FLSA and NYLL wage-and-hours claims. Therefore, I respectfully recommend that the Plaintiffs also be awarded post-judgment interest, to be calculated from the date the Clerk of Court enters judgment in this action until the date of payment, using the federal rate set forth in 28 U.S.C. § 1961. *See id.*

## CONCLUSION

For the reasons set forth above, I recommend that each individual Plaintiff be awarded the following amounts, which are comprised of unpaid overtime wages, spread of hours wages, liquidated damages, prejudgment interest and statutory damages:  $146,582.94 for Arnulfo Maldonado, $70,711.24 for Jorge Levya Cabrera, and $61,114.91 for Domingo Juarez.  I also recommend an award of post-judgment interest, to be calculated from the date the Clerk of Court enters judgment in this action until the date of payment, using the federal rate set forth

in 28 U.S.C. § 1961.  Finally, I recommend awarding Plaintiffs attorneys' fees in the amount of

$6,590.00 and the requested amount of costs totaling $905.60.  Plaintiffs are directed to serve

a copy of this Report and Recommendation on Defendants and file proof of service of the same

on the docket by no later than July 30, 2021.

|  | **Maldonado** | **Cabrera** | **Juarez** |
|---|---|---|---|
| Overtime Wages | $46,137.90 | $19,969.20 | $17,993.50 |
| Unlawful Deductions | $6,371.20 | $6,408.60 | $4,912.60 |
| Spread-of-Hours Pay | $6,819.00 | n/a | n/a |
| Liquidated Damages | $59,328.10 | $26,377.80 | $22,906.10 |
| Prejudgment Interest | $16, 694.46 | $7,955.64 | $5,302.71 |
| Prejudgment Interest on Spread-of-Hours Pay | $1,232.28 | n/a | n/a |
| Statutory Damages – Wage Notices | $5,000.00 | $5,000.00 | $5,000.00 |
| Statutory Damages – Wage Statements | $5,000.00 | $5,000.00 | $5,000.00 |
|  |  |  |  |
| <u>**TOTALS:**</u> | **$146,582.94** | **$70,711.24** | **$61,114.91** |

Dated: July 17, 2021
    New York, New York

Respectfully submitted,

KATHARINE H. PARKER
United States Magistrate Judge

**NOTICE**

**The Defendant shall have seventeen days from the service of this Report and
Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule
72(b) of the Federal Rules of Civil Procedure (*i.e.,* until February 5, 2017). *See also* Fed. R.
Civ. P. 6(a), (d) (adding three additional days only when service is made under Fed. R. Civ.**

P. 5(b)(2)(C) (mail), (D) (leaving with the clerk), or (F) (other means consented to by the parties)). Plaintiff shall have fourteen days from the service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure (*i.e.,* until February 2, 2017).

If the Defendant files written objections to this Report and Recommendation, the Plaintiff may respond to the Petitioner's objections within fourteen days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Alternatively, if Plaintiff files written objections, the Defendant may respond to such objections within seventeen days after being served with a copy.  Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(a), (d). Such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Lorna G. Schofield at the United States Courthouse, 500 Pearl Street, New York, New York 10007, and to any opposing parties. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b). Any requests for an extension of time for filing objections must be addressed to Judge Schofield. The failure to file these timely objections will result in a waiver of those objections for purposes of appeal. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b); *Thomas v. Arn*, 474 U.S. 140 (1985).